UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:13-CV-00066-TBR

ROGER HOVIOUS, *et al.*            Plaintiffs

v.

THE STANLEY BLACK & DECKER            Defendant
SUPPLEMENTAL UNEMPLOYMENT BENEFIT PLAN

**ORDER**

This matter is before the Court upon Defendant The Stanley Black & Decker Supplemental Unemployment Benefit Plan's Motion for Summary Judgment, (Docket No. 13), and Plaintiffs' competing Cross-Motion for Partial Summary Judgment, (Docket No. 16). Plaintiffs have responded to Defendant's Motion, (Docket No. 17), and Defendant has replied, (Docket No. 18). Defendant's Reply, (Docket No. 18), also responds to Plaintiffs' Cross-Motion. Plaintiffs have replied in support of their Cross-Motion, (Docket No. 19). With leave of Court, Defendant also has filed a Sur-Reply in support of its Motion. (Docket No. 22.) Accordingly, these matters now are ripe for adjudication. For the reasons that follow, Defendant's Motion will be DENIED, and Plaintiffs' Cross-Motion will be GRANTED.

BACKGROUND

This action arises out of the termination of certain operations at the Parker Kalon-Emhart Teknologies ("PKE Teknologies") plant in Campbellsville, Kentucky. The Plaintiffs, all former union employees at the plant, claim they are eligible for up to forty weeks of benefits following their permanent layoff. The Defendant claims that Plaintiffs

are eligible for twenty-six weeks of benefits. The parties disagree how to interpret three contracts between the Plaintiffs' union and Stanley Black & Decker ("Black & Decker"), which controls PKE Teknologies.

First is the collective bargaining agreement ("CBA"). (Docket #13, Ex. B). The CBA discusses wages, work hours, seniority, strikes, and other labor-related issues. The CBA contains a grievance process culminating in arbitration.

Second is the Effects Bargaining Offer of Agreement ("Effects Offer"). (Docket #13, Ex. D). The Effects Offer was drafted by Black & Decker as an offer of benefits to union employees terminated at the PKE Teknologies plant. Although the union did not sign the Effects Offer, both parties agree it is valid. The Effects Offer incorporates the CBA's grievance process.

Third is Stanley Black & Decker's Supplemental Unemployment Benefit Plan ("Benefit Plan"). (Docket #13, Ex. C). The Benefit Plan is a company policy that defines unemployment benefits and who is eligible for them. The Benefit Plan only applies to Plaintiffs, as union members, if "***the Employer has agreed to add this Plan through written agreement* with the applicable union**." (emphasis in original) (Docket #13, Ex. C). The parties agree that the Effects Offer is the separate agreement that qualifies Plaintiffs' for the Benefit Plan. Disputes arising under the Benefits Plan are resolved by the Plan Administrator.

On August 31, 2011, Black & Decker notified employees that it would cease manufacturing self-tapping screws at the PKE Teknologies plant. The parties disagree whether this was a workforce reduction or a "Full Plant Closing." Under the Benefit

Plan, employees could receive up to twenty-six weeks of benefits for a workforce reduction and forty weeks of benefits following a "Full Plant Closing." A "Full Plant Closing" is defined as "a facility at which the Employer is no longer performing any type of manufacturing operation." (Docket #13, Ex. C).

Black & Decker informed employees that they were eligible for twenty-six weeks of benefits. Black & Decker's position is that distribution operations continue at the PKE Teknologies plant, thereby making the Plaintiffs' termination a "workforce reduction." (Docket #13, Ex. E). Black and Decker met to negotiate with the Plaintiff's union, the International Brotherhood of Teamsters, Local 783 ("the Union"), on September 7, 2011. Black & Decker contends that the Union agreed to a maximum of twenty-six weeks benefits during negotiations.

The Plaintiffs argue that a Full Plant Closure had occurred. Plaintiffs also argue that the Effects Offer contains no cap on benefits, but instead incorporates the Benefit Plan's dichotomy of forty weeks for a "Full Plant Closing" and twenty-six weeks for a workforce reduction. The Plaintiffs sent several letters to the Plan Administration for an explanation as to why the Plaintiffs were not eligible for up to forty weeks of benefits. The Plan Administrator reaffirmed Black & Decker's position that a Full Plant Closing had not occurred and Black & Decker's belief that the Union had accepted a cap of twenty-six weeks during bargaining on September 7, 2011. Plaintiffs, all former union employees at the plant, brought this action pursuant to the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking additional unemployment benefits.

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

DISCUSSION

I. **The unambiguous terms of the Benefit Plan govern whether Plaintiffs are eligible for up to twenty-six or forty weeks of benefits.**

"The interpretation of a contract is a question of law for the court." *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 792 (W.D. Ky. 2005) (citing *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)). "In

the absence of an ambiguity, Kentucky[1] courts will enforce a written instrument strictly according to its terms and will assign those terms their ordinary meaning." *Id.* (citing *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)). "Generally, the parol evidence rule bars evidence of oral statements or writings made prior to or contemporaneous with a written agreement that contradict, vary or alter the language appearing in the writing." *Id.* at 793 (citation omitted).

Defendant seeks to introduce parol evidence that Black & Decker and the Union orally agreed that benefits would be capped at twenty-six weeks. Whether an oral agreement was actually reached is irrelevant since it would contradict the terms of the Effects Offer. The Effects Offer states "all eligible employees" will be paid "under the terms of the **Stanley Black & Decker Supplemental Unemployment Benefit Plan (attached hereto)**."[2] (emphasis in original). The Benefit Plan establishes a dichotomy in

---

[1] Neither party addresses whether Connecticut law would apply. All three agreements have a choice of law provision selecting Connecticut. Kentucky and Connecticut have adopted the same legal standard: " The parol evidence rule does not of itself, therefore, forbid the presentation of 'parol evidence,' that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence *to vary or contradict the terms* of such a contract." (emphasis in original) *TIE Communications, Inc. v. Kopp*, 218 Conn. 281, 288 (Conn. 1991).

[2] The full provision states:

> The Company shall pay all eligible employees who are on the Company's payroll (i.e., those employees who are actively at work, on vacation, on an approved leave of absence, or who are on layoff but who still have recall rights) on the date of this Agreement is executed, forty (40) hours supplemental unemployment benefits (SUB) pay (calculated at each employee's regular straight time hourly rate, not including night shift or other bonuses, at the time they are terminated) for each full or partially completed year of Company service, to a maximum of twenty-six (26) years of service under the terms of the **Stanley Black & Decker Supplemental Unemployment Benefit Plan (attached hereto)**. For SUB pay purposes only, employees with less than four (4) full years of

which employees may receive up to forty weeks of benefits in the event of a "Full Plant Closing" or twenty-six weeks of benefits for a workforce reduction. Accordingly, if Black & Decker's termination of the self-tapping screw line was a "Full Plant Closing," then the Plaintiffs may be entitled to forty weeks of benefits. The purported oral agreement would contradict this term and therefore may not be considered. Whether or not a "Full Plant Closing" occurred is a factual issue that has not been presented at this time.

## II. The Plaintiffs' claims are not barred by the CBA's grievance process.

Defendant also argues that the Plaintiffs were required to exhaust the CBA's grievance process, which culminates in arbitration, and that by failing to do so the Plaintiff's claim is barred. (Docket #13). Plaintiffs respond that the Benefit Plan contains a separate appeals process which applies to this case.

If a collective bargaining agreement contains an arbitration clause, there is a "presumption of arbitrability." *Cleveland Elec. Illuminating Co. v. Util. Workers Union, Local 270*, 440 F.3d 809, 816 (6th Cir. 2006). This presumption may be overcome by showing a separate appeals process was established for certain disputes. *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256 (6th Cir. 2010) (collecting cases); *see also Soc'y of Prof'l Eng'g Employees in Aero. v. Spirit Aerosystems, Inc.*, 2012 U.S. Dist. LEXIS 170320 *17 (D. Kan. 2012) (holding the "grievance-arbitration process"

---

> Company service at the time of termination shall be credited with having four (4) full years of Company service. Each employee's regular straight time hourly rate shall be calculated by using the highest labor grade of any permanent job each employee has held since September 9, 2011. (emphasis in original).

does not apply to disputes which have their own "entirely separate structure for resolving disputes").

The Benefit Plan establishes a separate appeals process from the CBA's grievance system. The CBA's four-step grievance process first requires an employee to file a grievance with their supervisor within five days of an incident. The employee may then appeal to a higher supervisor, next appeal to the company Human Resources manager, and finally culminates in arbitration. The Benefit Plan contains its own appeal process. It requires employees to file an appeal with the Plan Administrator "within sixty days after receiving a denial of the claim." (Docket #13, Ex. C). The Benefit Plan specifies what details the employee must include in the appeal, how the employee can request documents, how long the Plan Administrator has to make a decision, and when benefits are payable if the employee wins the appeal.

The Benefit Plan's appeal process would be deprived of meaning if an employee's appeal of their benefits were instead handled by the CBA's grievance process. *Int'l Union v. Yard-Man*, 716 F.2d 1476, 1480 (6th Cir. 1983) (stating contracts "must be construed so as to render none [clause] nugatory"). It is also rational that the CBA's grievance process would apply to the daily labor issues – overtime, vacation, etc. – contained in the CBA, while the Benefit Plan's appeals process would apply to the benefits found in the Benefits Plan. Finally, the parties own actions show they understood the Benefit Plan's appeal process to govern. The Plaintiffs sent a letter to the Plan Administrator requesting a reconsideration of his ruling that the Plaintiffs were only entitled to twenty-six weeks of benefits. (Docket #13, Ex. E). The Plan Administrator responded that it was Black &

Decker's position that less than a Full Plant Closing had occurred and therefore the Plaintiffs were only entitled to twenty-six weeks of benefits. (Docket #13, Ex. E).

## CONCLUSION

The purported oral agreement reached by the Union and Black & Decker is parol evidence that cannot alter the plain terms of the Effects Offer. The Plaintiffs' right to benefits will be governed by the Effects Offer and the Benefits Plan which it adopts. Whether the Plaintiffs are entitled to a maximum of forty weeks of benefits following a Full Plant Closing is a factual issue that has not been presented.

The Plaintiffs claims are not barred for failing to exhaust the grievance process in the CBA because the Benefit Plan established a separate dispute resolution process.

IT IS HEREBY ORDERED that Defendant's Motion for Motion for Summary Judgment (Docket #13) is DENIED. IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment is GRANTED.

Date:


cc: Counsel